MAYER BROWN LLP
ELSPETH V. HANSEN (SBN 292193)
*ehansen@mayerbrown.com*
Two Palo Alto Square #300
3000 El Camino Real
Palo Alto, CA 94306
Telephone: (650) 331-2043
Facsimile: (650) 331-2060

MAYER BROWN LLP
HANS J. GERMANN (Pro Hac Vice To Be Filed)
*hgermann@mayerbrown.com*
71 S Wacker Drive
Chicago, IL 60606
Telephone: (312) 701-8792
Facsimile: (312) 706-8169

RAYMOND P. BOLAÑOS (SBN 142069)
*rb2659@att.com*
AT&T Services, Inc. Legal Dept.
430 Bush Street, 6th Floor
San Francisco, CA 94108
Telephone: (415) 268-9491
Facsimile: (415) 543-0418

Attorneys for Plaintiff
New Cingular Wireless PCS, LLC d/b/a AT&T Mobility

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| NEW CINGULAR WIRELESS PCS, LLC, D/B/A AT&T MOBILITY, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SANTA BARBARA, CALIFORNIA,<br><br>Defendant. | Case No. 20-CV-11804<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**AND**<br><br>**REQUEST FOR EXPEDITED REVIEW PURSUANT TO 47 U.S.C. § 332(c)(7)(B)(v)** |

1

Plaintiff New Cingular Wireless PCS, LLC, d/b/a AT&T Mobility ("AT&T"), a limited liability company organized and existing under the laws of Delaware, complains against Defendant County of Santa Barbara, California (the "County") and alleges as follows:

**JURISDICTION AND VENUE**

1. This action arises under the laws of the United States, including the Communications Act of 1934, as amended by the Telecommunications Act of 1996, 47 U.S.C. §§ 253 and 332 ("Act"). This Court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 (federal question) and 1337 (commerce). The Court's authority to grant declaratory relief and related injunctive relief is based upon 28 U.S.C. §§ 2201-2202 because an actual controversy exists.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because AT&T's claims stated herein arose in this judicial district.

**INTRODUCTION**

3. For more than a year, AT&T has been trying to place "small cell" wireless facilities (*i.e.*, small antennas and related equipment) (the "Proposed Small Cells") on poles in the County's rights-of-way, including utility poles the County does not own, to provide and improve wireless services in the County. Federal law limits the ability of municipalities to delay or otherwise block installation of such facilities, based on nationwide goals of promoting the widespread availability of advanced, reliable wireless services. Federal law also imposes standards for fees that local governments can charge in connection with applications for and installations of small cells. The County has violated these federal laws, and hence AT&T seeks declaratory and injunctive relief.

**PARTIES**

4. Plaintiff AT&T is a limited liability company duly organized, existing, and operating under the laws of Delaware, with its principal place of business in Atlanta, Georgia, with offices at locations throughout California. At all times

-2-

Complaint for Declaratory and Injunctive Relief
and Request for Expedited Review
Case No. 20-CV-11804

relevant herein, AT&T has been and is qualified to do business in California. AT&T is a wireless telecommunications carrier that provides personal wireless services within the meaning of the Act.

5. Defendant County of Santa Barbara is a California political subdivision under the laws of the State of California.

## LEGAL BACKGROUND

6. "Congress enacted the Telecommunications Act of 1996 (TCA), 110 Stat. 56, to promote competition and higher quality in American telecommunications services and to 'encourage the rapid deployment of new telecommunications.'" *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115 (2005). "One of the means by which it sought to accomplish these goals was reduction of the impediments imposed by local governments upon the installation of facilities for wireless communications, such as antenna towers." *Id*. In order to prioritize and streamline deployment of wireless technologies on a national basis, the Act restricts the authority of state and local governments to regulate "the placement, construction, and modification of personal wireless service facilities." 47 U.S.C. § 332(c)(7)(B).

7. Under the Act, municipalities must act upon applications to place wireless facilities within a "reasonable period of time" (47 U.S.C. § 332(c)(7)(B)(ii)); fees imposed by local governments for right-of-way wireless deployments must be fair, reasonable, and nondiscriminatory (47 U.S.C. § 253(c)); local regulation may not "prohibit or have the effect of prohibiting the ability" of a carrier to provide telecommunications services (47 U.S.C. § 253(a)); and local regulation of the placement of wireless facilities "shall not prohibit or have the effect of prohibiting the provision of personal wireless services" (47 U.S.C. § 332(c)(7)(B)(i)(II)). The Federal Communications Commission ("FCC") has promulgated orders and regulations interpreting and implementing Sections 253 and 332 of the Act, which include specification of reasonable periods of time under

-3-

Complaint for Declaratory and Injunctive Relief
and Request for Expedited Review
Case No. 20-CV-11804

Section 332, lawful fees for applications and attachments of small cells, and identification of the type of local action, or inaction, that may unlawfully prohibit service.

8. On September 27, 2018, the FCC released its "*Small Cell Order*," *In the Matter of Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment, Etc.*, 33 FCC Rcd. 9088. In that order, the FCC, among other things, implemented Section 332's requirement that localities act upon wireless siting applications within a "reasonable period of time" by specifying the presumptive maximum timeframes, known as "shot clocks," for small cell applications. In particular, the FCC established a shot clock of 60 days for applications seeking to collocate small cells on existing structures (such as an existing utility pole), and a shot clock of 90 days to deploy a small cell on a new support structure. 47 C.F.R. § 1.6003(c)(1)(i) & (iii); *Small Cell Order*, ¶¶ 13, 105; see also, *City of Portland v. United States*, 969 F.3d 1020, 1043-44 (9th Cir. 2020) (upholding the small cell shot clocks).

9. The small cell shot clocks apply to all required approvals and authorizations needed to deploy small cells. The shot clock timeframes apply "to all authorizations a locality may require, and to all aspects of and steps in the siting process, including license or franchise agreements to access ROW, building permits, public notices and meetings, lease negotiations, electric permits, road closure permits, aesthetic approvals, and other authorizations needed for deployment." *Small Cell Order*, ¶ 132 (emphases added); *see also id*. at ¶ 144 ("All of these permits are subject to Section 332's requirement to act within a reasonable period of time, and thus all are subject to the shot clocks we adopt or codify here").

10. The shot clock period for a siting application is the presumptively reasonable period of time defined by FCC regulation, plus the number of days of any tolling pursuant to the FCC's regulation, commencing when an application is first submitted. 47 C.F.R. § 1.6003(b). The FCC regulation provides two ways to

-4-

Complaint for Declaratory and Injunctive Relief
and Request for Expedited Review
Case No. 20-CV-11804

toll a small cell shot clock: (i) by mutual agreement between the siting authority and the applicant; and (ii) unilaterally by the siting authority by providing to the applicant, within ten days after submittal of the application, a written notice that the application is materially incomplete, clearly and specifically identifying the missing documents or information, and citing the specific rule or regulation that requires such missing documents or information. 47 C.F.R. § 1.6003(d)(1). Second or subsequent tolling periods for incompleteness, which must be noticed within 10 days from the applicant's response to a prior valid incomplete notice, are limited to requests for the same missing documents or information that are still missing following the applicant's initial response. 47 C.F.R. § 1.6003(d)(3). The FCC regulation also explains that "[t]he shot clock date for a siting application is determined by counting forward, beginning on the day after the date when the application was submitted…." 47 C.F.R. § 1.6003(e). If the shot clock deadline falls on a weekend or holiday, the shot clock deadline is the next business day. *Id.*

    11.    If the siting authority fails to take final action on a small cell siting application by the shot clock deadline, the failure violates Section 332(c)(7)(B)(v) and "also amount[s] to a presumptive prohibition on the provision of personal wireless services within the meaning of Section 332(c)(7)(B)(i)(II)." *Small Cell Order*, ¶ 118.

    12.    In the *Small Cell Order*, the FCC also promulgated standards for cost-based nonrecurring and recurring fees that may be charged in connection with small cell applications and installations. To ensure municipalities impose only fair and reasonable costs, the FCC established a standard for lawful fees, which requires that: "(1) the fees are a reasonable approximation of the state or local government's costs, (2) only objectively reasonable costs are factored into those fees, and (3) the fees are no higher than the fees charged to similarly-situated competitors in similar situations". *Small Cell Order*, ¶ 50.

-5-

Complaint for Declaratory and Injunctive Relief
and Request for Expedited Review
Case No. 20-CV-11804

13. The FCC established a safe harbor for presumptively reasonable fees: $500 for the total of all nonrecurring fees for an application to collocate up to five small cells, plus $100 for each small cell beyond five, or $1,000 for the total of all nonrecurring fees for a new pole to support small cells. *Small Cell Order*, ¶ 79. The FCC explained that higher fees could only be justified in "very limited circumstances." *Id*. at ¶ 80. Indeed, the FCC ruled that unreasonably high application fees may not be imposed even if they are actual costs because they effectively prohibit service under Sections 253 and 332 of the Act. *Id*. at ¶ 74. The Ninth Circuit upheld the FCC's fee standard and safe harbor for fees. *See City of Portland*, 969 F.3d at 1037-39.

## FACTUAL BACKGROUND

14. AT&T is a wireless carrier that provides both wireless telecommunications services and personal wireless services. AT&T provides wireless services to its customers throughout the area relevant to this Complaint pursuant to spectrum frequency licenses issued by the FCC. In order to provide reliable, high-quality wireless services, AT&T continually assesses the state of its wireless network to identify and address network needs before they adversely affect service to AT&T customers.

15. AT&T's radio frequency engineers have identified deficiencies in its wireless services throughout the County. The deficiencies are caused by a dramatic increase in mobile data on the network, which constrains network capacity and can degrade service quality for AT&T's wireless customers. If not quickly rectified, these deficiencies will result in unreliable signals, and customers will have problems accessing AT&T's wireless network, particularly during busy usage periods. In the long term, if these deficiencies remain, wireless customers will continue to have problems accessing AT&T's wireless network throughout the County on an ongoing basis. AT&T now needs to eliminate these service deficiencies and improve reliability of, and access to, its personal wireless services throughout the County.

-6-

Complaint for Declaratory and Injunctive Relief
and Request for Expedited Review
Case No. 20-CV-11804

AT&T's radio frequency engineers have determined that the Proposed Small Cells are required to provide adequate service to its customers, to remedy these deficiencies, and to close an existing significant service coverage gap. Every day that AT&T is prevented from installing the Proposed Small Cells, it is materially inhibited from improving wireless services.

16. AT&T carefully investigated locations to place the Proposed Small Cells, taking into consideration the County's applicable regulations. In order to address its network service needs, and to close the significant service coverage gap in the subject portions of the County, AT&T identified poles in the public rights-of-way in areas where a small cell could close AT&T's gap, and AT&T selected the least intrusive means from among alternative sites for each of the Proposed Small Cells.

17. In 2017, the County commissioned a study of fees for various processes, including applications for use permits (the "2017 Study"). The 2017 Study did not specifically analyze costs related to wireless facility deployment applications, did not analyze costs related to right-of-way deployments, did not differentiate between types of wireless facilities, and did not differentiate between collocation or non-collocation applications. Nevertheless, the County adopted fees based on the 2017 Study and applies those fees to wireless siting applications, including applications to place small cells on utility poles in the public rights-of-way.

18. In December 2019, the County, recognizing that its application processes for small cells were excessive, passed an ordinance to streamline small cell application processes. The costs for these streamlined reviews necessarily would have been much less than the fees based on the 2017 Study. This ordinance, however, never became effective.

19. Based on the 2017 Study, the County demanded application fees totaling $11,645.32 for each of the applications for AT&T's Proposed Small Cells.

-7-

Complaint for Declaratory and Injunctive Relief
and Request for Expedited Review
Case No. 20-CV-11804

Such fees do not represent a reasonable approximation of the County's reasonable costs to process small cell applications, they are objectively unreasonable, and are many times higher than the FCC safe harbor amounts.

20. In lieu of paying the County's unreasonable and unjustified fees, AT&T tendered payment with each application for the maximum application fee authorized under the FCC's safe harbor rules.

21. On June 1, 2020, AT&T submitted via U.S. Mail three permit applications for major conditional use permits to place the Proposed Small Cells on non-County-owned utility poles in the public rights-of-way. The County received these three applications on June 4, 2020:

|  | Location | AT&T Site ID | Date Filed |
|---|---|---|---|
| Site 1 | Collocation on existing utility pole, public right-of way near 6616 Sabado Tarde Road | STBR1_010 | June 4, 2020 |
| Site 2 | Installation on a replacement utility pole, public right-of-way near 6557 Del Playa Drive | STBR1_005 | June 4, 2020 |
| Site 3 | Installation on a replacement utility pole, public right-of-way near 6510 Cervantes Road | IVSTA_001 | June 4, 2020 |

22. AT&T's application for small cell STBR1_010 seeks to collocate the small cell on an existing utility pole, so the FCC's 60-day shot clock applies. On June 13, 2020, the County issued a timely and valid incomplete notice for this application, which tolled the shot clock. AT&T responded to that incomplete notice on July 30, 2020, which restarted the shot clock at zero under the FCC shot clock regulation. On August 3, 2020, the County issued a second timely and valid incomplete notice for this application, which tolled the shot clock on Day 4. AT&T responded to the second incomplete notice on September 10, 2020, and the shot clock resumed on that date as Day 4 pursuant to the FCC shot clock regulation. The

shot clock for this application was not tolled again, and expired on November 5, 2020. On November 19, 2020, the County issued a third incomplete notice. This third incomplete notice was not valid, however, because it was not timely, and because it requested information not previously requested.

23.  AT&T's application for small cell STBR1_005 seeks to install the small cell on a replacement utility pole, so the FCC's 90-day shot clock applies. On June 13, 2020, the County issued a timely and valid incomplete notice for this application, which tolled the shot clock. AT&T responded to that incomplete notice on July 30, 2020, which restarted the shot clock at zero under the FCC shot clock regulation. On August 3, 2020, the County issued a second timely and valid incomplete notice for this application, which tolled the shot clock on Day 4. AT&T responded to the second incomplete notice on September 10, 2020, and the shot clock resumed on that date as Day 4 pursuant to the FCC shot clock regulation. On September 15, 2020, the County issued a third incomplete notice. The third incomplete notice was not valid because it sought only to require AT&T to submit unlawfully excessive application fees and an agreement to pay the unlawfully excessive applications fees. On November 20, 2020, the County issued a fourth incomplete notice. The fourth incomplete notice was not valid because it was not timely and because it requested information not previously requested. Thus, the shot clock kept running and it expired on December 7, 2020 (Saturday, December 5 was Day 90, so the shot clock deadline fell on the next business day).

24.  AT&T's application for small cell IVSTA_001 seeks to install the small cell on a replacement utility pole, so the FCC's 90-day shot clock applies. On June 13, 2020, the County issued a timely and valid incomplete notice for this application, which tolled the shot clock. AT&T responded to that incomplete notice on July 30, 2020, which restarted the shot clock at zero under the FCC shot clock regulation. On August 3, 2020, the County issued a second timely and valid incomplete notice for this application, which tolled the shot clock on Day 4. AT&T

responded to the second incomplete notice on September 10, 2020, and the shot clock resumed on that date as Day 4 pursuant to the FCC shot clock regulation. On November 20, 2020, the County issued a third incomplete notice. The third incomplete notice was not valid because it was not timely and because it requested information not previously requested. Thus, the shot clock continued to run, and it expired on December 7, 2020 (Saturday, December 5 was Day 90, so the shot clock deadline fell on the next business day).

25. The County recently enacted a new ordinance, effective November 5, 2020, to cap the total of nonrecurring fees for small cell applications at $3,000 per site.

26. On November 9, 2019, Deputy County Counsel notified AT&T that the County would apply the $3,000 fee to AT&T's application for small cell STBR1_005. This $3,000 charge is unreasonable and unjustified.

27. The County's cost estimates for small cell applications include unjustified and unreasonable components.

28. To date, the County has not acted to approve or deny AT&T's applications for the Proposed Small Cells.

29. As set forth below, the County's actions and inactions violate federal law.

## FIRST CLAIM FOR RELIEF
### (Unreasonable Delay and Shot Clock Violation)
### (47 U.S.C. § 332(c)(7)(B)(ii); 47 C.F.R. § 1.6003)

30. AT&T hereby incorporates by reference the allegations of paragraphs 1 through 29, inclusive, as though fully set forth herein.

31. The Act required the County to act upon AT&T's applications to place wireless facilities within a "reasonable period of time." 47 U.S.C. § 332(c)(7)(B)(ii).

32. The County failed to act within a reasonable period of time upon AT&T's applications to place small cell facilities on poles in the rights-of-way.

33. The County also violated 47 U.S.C. § 332(c)(7)(B)(ii), as implemented by 47 C.F.R. § 1.6003 and the FCC's *Small Cell Order*, by failing to approve or deny by November 5, 2020 the collocation application AT&T submitted on June 4, 2020 for small cell STBR1_010.

34. AT&T will suffer imminent irreparable harm if the County continues to delay processing AT&T's small cell applications. Further, the entry of an injunction will serve the public interest by preserving the purpose of the Telecommunications Act to "encourage the rapid deployment of new telecommunications technologies." *Telecommunications Act of 1996*, 110 Stat. 56.

WHEREFORE, AT&T prays for judgment as set forth below.

## SECOND CLAIM FOR RELIEF
## (Effective Prohibition)
## (47 U.S.C. § 332(c)(7)(B)(i)(II))

35. AT&T hereby incorporates by reference the allegations of paragraphs 1 through 34, inclusive, as though fully set forth herein.

36. Section 332 of the Act mandates that local regulation of the placement of wireless facilities "shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II).

37. The County has effectively prohibited AT&T's provision of personal wireless services by failing to timely act upon AT&T's applications and by failing to approve those applications.

38. Local inaction by the end of the applicable small cell shot clock amounts to a presumptive prohibition on the provision of personal wireless services within the meaning of the Act. *See Small Cell Order*, ¶ 118. The FCC has explained that when a local government does not issue all necessary permits and authorizations in a timely manner, litigation will be expedited, and wireless services providers will have a straightforward path to fast and complete injunctive relief. *Id.*

39. The County's shot clock violations constitute an effective prohibition on AT&T's provision of personal wireless services, in violation of Section 332.

40. An effective prohibition, in violation of the Act, also occurs when a local requirement "'materially limits' or inhibits the ability of any competitor or potential competitor to compete in a fair and balanced legal and regulatory environment" (*Small Cell Order*, ¶ 35), such as "where a [local regulation] materially inhibits a provider's ability to engage in any of a variety of activities related to its provision of a covered service" (*id*. at ¶ 37). The material inhibition analysis "focuses on the service the provider wishes to provide, . . . including facilities deployment to provide existing services more robustly, or at a better level of quality." *Id.*, n.95. A local government "could materially inhibit service in numerous ways – not only by rendering a service provider unable to provide existing service in a new geographic area or by restricting the entry of a new provider in providing service in a particular area, but also by materially inhibiting the introduction of new services or the improvement of existing services." *Id.*, ¶ 37.

41. The County, by failing to act on AT&T's small cell applications, has materially inhibited AT&T's effort to improve its wireless network by building small cell wireless facilities in the County. The County has thus effectively prohibited AT&T from providing personal wireless services in the County.

42. The County has also effectively prohibited AT&T's provision of personal wireless services, because its failure to approve AT&T's permit applications has prevented AT&T from remedying a significant service coverage gap using the least intrusive means. AT&T's proposed small cell facilities will help AT&T address a significant service coverage gap in the County by providing and improving critical wireless services in the County, including by offloading network traffic carried by existing macro facilities in the area, and enabling faster data rates.

43. By placing the Proposed Small Cells in areas where AT&T's existing wireless telecommunications facilities are constrained and where AT&T experiences

-12-

Complaint for Declaratory and Injunctive Relief
and Request for Expedited Review
Case No. 20-CV-11804

especially high network traffic, AT&T can close its service gaps and address its customers' existing and forecasted demands for expanded wireless services. AT&T selected the proposed facility locations as the best available and least intrusive means to address its service objectives in the relevant portions of the County.

44.   AT&T will suffer imminent irreparable harm if the County continues to delay processing AT&T's small cell applications. Further, the entry of an injunction will serve the public interest by preserving the purpose of the Telecommunications Act to "encourage the rapid deployment of new telecommunications technologies." *Telecommunications Act of 1996*, 110 Stat. 56.

WHEREFORE, AT&T prays for judgment as set forth below.

## THIRD CLAIM FOR RELIEF
## (Effective Prohibition)
## (47 U.S.C. §§ 253(a), 332(c)(7)(B)(i)(II))

45.   AT&T hereby incorporates by reference the allegations of paragraphs 1 through 44, inclusive, as though fully set forth herein.

46.   Under Section 253(a) of the Act, local government regulation may not "prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service."

47.   Section 253(c) authorizes local governments to "require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis." The FCC has ruled that this provision authorizes a local government to recover a reasonable approximation of its objectively reasonable costs, and the FCC has ruled that excessive fees result in an unlawful effective prohibition under Sections 253 and 332 of the Act. *Small Cell Order* at ¶¶ 70-74. Thus, application fees that are in excess of the FCC's fee safe harbor (see ¶ 13, supra), and are not a reasonable approximation of a local government's objectively

reasonable costs, effectively prohibit personal wireless services and telecommunications services in violation of Sections 253 and 332 of the Act.

48. The County's application fees for small cells are excessive and far in excess of the FCC's safe harbor fees for small cells.

49. The County's fees for a small cell application are not a reasonable approximation of its objectively reasonable costs. The County's 2017 Cost Study did not specifically analyze costs related to wireless facility deployment applications, did not analyze costs related to right-of-way deployments, did not differentiate between types of wireless facilities, and did not differentiate between collocation or non-collocation applications.

50. The County, by imposing unlawful and excessive application fees that do not reflect its objectively reasonable costs, and by failing to act on AT&T's small cell applications, is materially inhibiting AT&T's efforts to deploy small cells to provide personal wireless services and telecommunications services in the County. The County's refusals to process AT&T's applications to completion absent payment of excessive and unlawful fees effectively prohibits AT&T from providing personal wireless services and telecommunications services, which violates the Act.

51. AT&T will suffer imminent irreparable harm if the County continues to demand excessive and unlawful fees, and to delay processing AT&T's small cell applications. Further, the entry of an injunction will serve the public interest by preserving the purpose of the Telecommunications Act to "encourage the rapid deployment of new telecommunications technologies." *Telecommunications Act of 1996*, 110 Stat. 56.

WHEREFORE, AT&T prays for judgment as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, AT&T prays for relief against the County as follows:

1. For a declaration and judgment that the County has violated the Act by failing to act within a reasonable period of time on AT&T's small cell applications;

2. For a declaration and judgment that the County has violated the Act by effectively prohibiting AT&T from improving and providing personal wireless service and telecommunications service;

3. For an order mandating that the County grant forthwith AT&T's major conditional use permit applications and immediately issue all permits and all other authorizations necessary for the construction of those facilities;

4. For an award of AT&T's costs of suit herein; and

5. For such other and further relief as the Court may deem just and proper.

## REQUEST FOR EXPEDITED REVIEW

Section 332 of the Act provides AT&T a private right of action for the County's failure to act on AT&T's wireless facility permit applications, and states that "[t]he court shall hear and decide such action on an expedited basis." 47 U.S.C. § 332(c)(7)(B)(v). AT&T respectfully requests a hearing and decision by the Court on an expedited basis as provided by the Act.

Dated: December 31, 2020          MAYER BROWN LLP

                                  By:   /s/ Elspeth V. Hansen
                                        Elspeth V. Hansen
                                        Attorneys for Plaintiff
                                        Two Palo Alto Square #300
                                        3000 El Camino Real
                                        Palo Alto, CA 94306